# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CHELSEA COHEN, as parent and legal
guardian of A.H., and all others similarly
situated,

      Plaintiff,

vs.

MEDNAX SERVICES, INC.,

      Defendant.

Case No.: _____

**<u>CLASS ACTION COMPLAINT</u>**

DEMAND FOR JURY TRIAL

## <u>CLASS ACTION COMPLAINT</u>

Chelsea Cohen, as parent and legal guardian of A.H. ("Plaintiff"), brings this Class Action Complaint against MEDNAX SERVICES, INC. ("MEDNAX" or "Defendant"), as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

## <u>NATURE OF THE ACTION</u>

1.    Plaintiff brings this class action against MEDNAX to seek damages for Plaintiff and the class of patients who they seek to represent, as well as other equitable relief, including without limitation injunctive relief designed to protect the very sensitive information of Plaintiff and other patients. This action arises from MEDNAX's failure to properly secure and safeguard personal identifiable information and personal health information, including without limitation, patients' names, Social Security numbers, driver's license numbers, dates of birth, addresses, health insurance information, medical and/or treatment information, and other health-related billing and claims information (collectively, "personal identifiable information," "PII" or "PHI").

2.      Plaintiff also alleges MEDNAX failed to provide timely, accurate, and adequate notice to Plaintiff and similarly situated MEDNAX current and former patients ("Class Members") that their PII had been lost and precisely what types of information was unencrypted and in the possession of unknown, unauthorized third-parties.

3.      MEDNAX is a national healthcare network that offers clinical care services, revenue cycle management, and patient engagement. As a result of the data breach, Plaintiff and approximately 1,290,670 Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

4.      On or about December 16, 2020, MEDNAX started notifying patients that unauthorized and unknown third-parties accessed MEDNAX's business email accounts between June 17 and June 22, 2020 ("Data Breach"). MEDNAX discovered the Data Breach on June 19, 2020, but allowed the breach to continue for days and did not notify affected patients for almost six months. Subsequently, MEDNAX revealed that unauthorized third-parties accessed MEDNAX's business email accounts between May 9, 2020 to July 6, 2020; October 20, 2019 to April 16, 2020; and October 13, 2015 to March 13, 2020.

5.      The PII compromised in the Data Breach includes (1) patient contact information (such as patient names, dates of birth, guarantor names, addresses, and email addresses); (2) Social Security numbers, driver's license numbers, government identification numbers, and/or financial account numbers; (3) health insurance information (payor name, payor contract dates, policy information including type and deductible amount, and subscriber, Medicare, and Medicaid numbers); (4) medical and/or treatment information (dates of services, locations, services requested or procedures performed, diagnosis, prescription information, physician names, and

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

Medical Record Numbers); and (5) billing and claims information (invoices, submitted claims and appeals, and patient account identifiers used by providers) and other protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

6.      MEDNAX maintained the PII in a reckless manner. In particular, patients' PII was maintained on MEDNAX's computer network in a condition vulnerable to cyberattacks, such as the phishing attack that obtained Defendant's employees' credentials and access to Defendant's network.

7.      Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition. Moreover, MEDNAX and its employees failed to properly monitor the computer network and systems that housed the PII. Had Defendant properly monitored its property, it would have discovered the intrusion sooner.

8.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect patients' PII; (ii) warn patients of its inadequate information security practices; and (iii) effectively monitor Defendant's network for security vulnerabilities and incidents. MEDNAX's conduct amounts to negligence and violates federal and state statutes.

9.      Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) deprivation of

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

rights they possess under the Maryland Personal Information Protection Act, Md. Comm. Code §§ 14-3501, *et seq.*; and (v) the continued and certainly an increased risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as MEDNAX fails to undertake appropriate and adequate measures to protect the PII. This risk will remain for the lifetimes of Plaintiff and Class Members.

10.   MEDNAX disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or at the very least negligently failing to take and implement adequate and reasonable measures to ensure that its patients' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third-party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## **PARTIES**

11.   Chelsea Cohen is the parent and legal guardian or A.H., and at all times mentioned herein Plaintiff was an individual citizen of the State of Maryland residing in Maryland. Plaintiff is a patient who received healthcare services from MEDNAX's affiliated physician practice group, Pediatrix of Maryland, P.A., in or about April 2020.[1] Plaintiff received a "Notice of Data Security Event" letter from MEDNAX, dated December 16, 2020, on or about that date.[2]

---

[1] Exhibit A, MEDNAX Data Event Update, dated Dec. 23, 2021. This Update includes a list of all MEDNAX-affiliated physician practice groups potentially impacted by the Data Breach and is also available at: https//emailevent.kroll.com (last accessed Jan. 21, 2021).
[2] Exhibit B, MEDNAX's sample *Notice of Data Security Event*, dated Dec. 16, 2020.

4

12.     Defendant MEDNAX is a healthcare services provider with its principal place of business at 1301 Concord Terrace, Sunrise, Florida.

## JURISDICTION AND VENUE

13.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member (including Plaintiff) is a citizen of a state different from MEDNAX to establish minimal diversity.

14.     This Court has personal jurisdiction over MEDNAX because it maintains its headquarters in Florida and/or has sufficient minimum contacts with Florida. Also, upon information and belief, the Data Breach at issue occurred through email accounts being used by Defendants' employees physically located in Florida.

15.     Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Defendant is based in this District, conducts business through this District (including promoting, selling, marketing, and distributing the MEDNAX brands and services at issue), and maintains Plaintiff's and Class Members' PII in this District.

## FACTUAL ALLEGATIONS

### *Background*

16.     Defendant MEDNAX is a national healthcare services provider offering newborn, anesthesia, maternal-fetal, radiology and teleradiology, pediatric cardiology, and other pediatric

5

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

subspecialty care services in 39 states and Puerto Rico.[3] Moreover, MEDNAX operates a consulting services branch that provides administrative services and solutions to optimize performance, resources and capacity within hospitals and healthcare providers.[4]

17.      In 2019, MEDNAX reported revenues of over $3.5 billion and had 4,327 physicians within its network.[5] MEDNAX lists over 70 MEDNAX-affiliated physician practice groups that were affected by this Data Breach.[6]

18.      In the ordinary course of receiving treatment and healthcare services from MEDNAX, patients are required to provide sensitive personal and private information such as:

- Names;
- Dates of birth;
- Social Security numbers;
- Driver's license numbers;
- Tribal identification numbers;
- Financial account information;
- Payment card information;
- Medical histories;
- Treatment information;
- Medication or prescription information;
- Beneficiary information;
- Provider information;
- Address, phone number, and email address, and;
- Health insurance information.

19.      On information and belief, MEDNAX and its affiliated partners ("Agents") provide each of their patients with a HIPAA compliant Notice of its Privacy Practices (the "Privacy Notice") in respect to how they handle patients' sensitive information.[7]

---

[3] *2019 Annual Report*, Mednax Health Solutions Partner (2019), at 3, *available at*: https://mednax.gcs-web.com/static-files/79b9289b-61f7-41a9-9394-81b99c902169 (last visited Jan. 20, 2021).
[4] *Id* at 7.
[5] *Id* at Selected Highlights.
[6] Ex. A, pp. 2-3.
[7] *See MEDNAX's Notice of Privacy Practices*, *available at*: https://www.mednax.com/notice-of-privacy-practices/ (last accessed Jan. 20, 2021).

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

20.     The Privacy Notice provides, in relevant part, the following:

I. WHO WE ARE
This Notice of Privacy Practices ("Notice") describes the privacy practices of MEDNAX Services, Inc., and its affiliated entities, its physicians, nurses and other personnel ("we" or "us"). It applies to services furnished to you at all of the offices where we provide services.

II. OUR PRIVACY OBLIGATIONS

**We are required by law to maintain the privacy of your health information** ("Protected Health Information" or "PHI") and to provide you with this Notice of our legal duties and privacy practices with respect to your PHI. **We are also obligated to notify you following a breach of unsecured PHI.** When we use or disclose your PHI, we are required to abide by the terms of this Notice (or other notice in effect at the time of the use or disclosure).[8]

21.     Thus, because of the highly sensitive and personal nature of the information MEDNAX acquires and stores with respect to its patients, MEDNAX promises in its Privacy Notice to, among other things, maintain the privacy of patients' health information.

22.     As a condition of receiving medical care and treatment at Defendant's Agents' facilities, MEDNAX requires that its patients entrust it with highly sensitive personal and health-related information.

23.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

24.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

25.     Plaintiff and the Class Members relied on MEDNAX to keep their PII confidential

---

[8] *Id.* (emphasis added).

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

and securely maintained, to use this information for business and health purposes only, and to make only authorized disclosures of this information.

### *The Data Breach*

26.     On or around June 19, 2020, MEDNAX discovered suspicious activity related to "certain Microsoft Office 360-hosted MEDNAX business email accounts[.]"[9] MEDNAX launched an investigation and determined that certain employees improperly opened or handled email or email attachments that were part of a widespread phishing scheme.

27.     MEDNAX's initial investigation uncovered that the unauthorized intrusion and access occurred between June 17, 2020 and June 22, 2020.[10]  That is, the intrusion continued after MEDNAX claims to have discovered the breach, on June 19, 2021. Upon further investigation, MEDNAX revealed "additional unauthorized access occurred between May 9, 2020-July 6, 2020; October 20, 2019-April 16, 2020; and October 13, 2015-March 13, 2020."[11]

28.     Upon information and belief, the phishing cyberattacks targeted MEDNAX due to its status as a healthcare entity that collects, creates, and maintains both personal identifying and personal health information. Moreover, the targeted phishing cyberattacks were expressly designed to gain access to private and confidential data, including, among other things, the PII of patients like Plaintiff and the Class Members. Because of this targeted attack, criminals were able to gain access to the employees' email accounts and subsequently access the protected PII of over one million MEDNAX patients.

29.     The email accounts and messages contained therein affected by this incident contained some combination of the following PII, which was not encrypted: patients' names, dates

---

[9] *See* Ex. B.
[10] *Id.*
[11] Ex. A.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

of birth, contact information, healthcare and medical information, insurance information, Social Security numbers, driver's license numbers, government identification numbers and/or financial account numbers.

30.     Plaintiff's PII was accessed and stolen in the Data Breach. Plaintiff further believes her stolen PII was subsequently available on the dark web. MEDNAX did not rule out that PII was viewed or accessed in the Data Breach.[12]

31.     IN its various data breach notices to affected patients, MEDNAX informed patients that they should take steps to "monitor and protect" their personal information, as well as that of their children.[13] MEDNAX also offered a certain group of impacted customers twelve months of identity monitoring services through Kroll. MEDNAX's warning to monitor patients' PII, and its offer of identity monitoring services, is acknowledgment by MEDNAX that the affected patients are subject to an imminent threat of identity theft.

32.     MEDNAX had obligations created by HIPAA, contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep their PII confidential and to protect it from unauthorized access and disclosure.

33.     Plaintiff and Class Members provided their PII to MEDNAX and/or its Agents with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

34.     MEDNAX's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the Data Breach.

---

[12] *Id*.
[13] *Id.*

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

### *Unreasonable Delay in Notifying Affected Patients of the Data Breach*

35.     Despite discovering the Data Breach on June 19, 2020, and acknowledging that criminals likely accessed Plaintiff's and the Class Members' PII, MEDNAX did not begin to notify affected patients until December 16, 2020, nearly six months later. Compounding this, MEDNAX later discovered that phishing attacks against it had been occurring on and off since October 15, 2015 – over five years before the December 2020 notices.

### *Phishing Explained*

36.     Phishing attacks like those used by criminals in this Data Brach are among the oldest, most common, and well-known form of cyberattacks. According to Verizon, over 90% of all cybersecurity attacks that result in a data breach start with a phishing attack.[14] MEDNAX knew or should have known how to prevent these attacks to reasonably protect sensitive PII and health information.

37.     "Phishing is a cyber-attack that uses disguised email as a weapon. The goal is to trick the email recipient into believing that the message is something they want or need — a request from their bank, for instance, or a note from someone in their company — and to click a link or download an attachment."[15] The fake link will typically mimic a familiar website and require the input of credentials. Once inputted, the credentials are then used to gain unauthorized access into a system. "It's one of the oldest types of cyber-attacks, dating back to the 1990s" and one that every organization with an internet presence is aware.[16] It remains the "simplest kind of

---

[14] *Verizon Says Phishing Drives 90% of Cybersecurity Breaches*, Graphus (Jan. 21, 2020), *available at*: https://www.graphus.ai/verizon-says-phishing-still-drives-90-of-cybersecurity-breaches/ (last accessed Jan. 20, 2021).
[15] Josh Fruhlinger, *What is Phishing? How This Cyber-Attack Works and How to Prevent It*, CSO Online (Sept. 4, 2020), *available at*: https://www.csoonline.com/article/2117843/what-is-phishing-how-this-cyber-attack-works-and-how-to-prevent-it.html (last accessed Jan. 20, 2021).
[16] *Id.*

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

cyberattack and, at the same time, the most dangerous and effective."[17]

38.     Phishing attacks are generally preventable with the implementation of a variety of proactive measures such as purchasing and using some sort of commonly available anti-malware security software (such as the ubiquitous Malwarebytes).  Most cybersecurity tools have the ability to detect when a link or an attachment is not what it seems.[18]

39.     Other proactive measures include sandboxing inbound e-mail (*i.e.*, an automated process that segregates e-mail with attachments and links to an isolated test environment, or a "sandbox," wherein a suspicious file or URL may be executed safely), inspecting and analyzing web traffic, penetration testing (which can be used to test an organization's security policy, its adherence to compliance requirements, its employees' security awareness and the organization's ability to identify and respond to security incidents), and employee education, just to name some of the well-known tools and techniques to prevent phishing attacks.

### *Defendant Failed to Comply with FTC Guidelines*

40.     In 2016, the Federal Trade Commission ("FTC") updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.  The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[19] The guidelines also

---

[17] *What is Phishing?*, Malwarebytes, *available at*: https://www.malwarebytes.com/phishing/ (last accessed Jan. 5, 2021).
[18] *Id.*
[19] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016), *available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 20, 2021).

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[20]

41.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

42.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

43.     MEDNAX failed to properly implement basic data security practices. Its failure to employ reasonable and appropriate measures to protect against unauthorized access to patient personal identifying and health information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

44.     Defendant was at all times fully aware of its obligation to protect the PII and PHI of its patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[20] *Id.*

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

### *Defendant's Conduct Violates HIPAA*

45.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

46.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data MEDNAX left unguarded.

47.     The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA.   These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

### *Plaintiff's Experience*

48.     Plaintiff Chelsea Cohen's child, A.H. was born in April 2020 and received care from MEDNAX's Agent, Pediatrix of Maryland, P.A., along with Ms. Cohen. Plaintiff was required to supply her and A.H.'s personal identifiable and confidential health information to MEDNAX, including but not limited to name, address, date of birth, Social Security number, health insurance information, and medical and/or treatment information.

49.     Plaintiff received the *Notice of Data Security Event*, dated December 16, 2020, on or about that date. It was addressed to the "Parent or Legal Guardian of [A.H.]," which is Ms. Cohen.

50.     As a result of the Data Breach notice, Ms. Cohen spent time dealing with the

13

consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Security Event*, communicating with MEDNAX agents, exploring credit monitoring and identity theft insurance options, attempting to sign up for the credit monitoring supplied by MEDNAX, reporting the breach to the IRS and FTC, and self-monitoring accounts related to A.H. This time has been lost forever and cannot be recaptured.

51.     Plaintiff is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

52.     Plaintiff stores any and all documents containing PII in a safe and secure location, and destroys any documents she receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise her credit card accounts, confidential health information, and identity. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

53.     Plaintiff suffered actual injury and damages in paying money to MEDNAX, through her health insurance, for medical services before the Data Breach; expenditures which she would not have made had MEDNAX disclosed that it lacked data security practices adequate to safeguard PII.

54.     Ms. Cohen and A.H. suffered actual injury in the form of damages to and diminution in the value of their PII—a form of intangible property that they entrusted to MEDNAX for the purpose of the provision of medical services, which was compromised in and as a result of the Data Breach.

55.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of their privacy, especially A.H.'s medical and treatments information, and the potential loss of Social Security numbers.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

56.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from A.H.'s PII, especially the Social Security numbers, being placed in the hands of unauthorized third-parties and possibly criminals.

57.     Ms. Cohen and A.H. have a continuing interest in ensuring that A.H.'s PII, which, upon information and belief, remains backed up in MEDNAX's possession, is protected and safeguarded from future breaches.

### *MEDNAX Breached Its Obligations to the Class*

58.     MEDNAX breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. MEDNAX's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.      Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b.      Failing to adequately protect patients' personal identifying and personal health information;

c.      Failing to properly monitor its own data security systems for existing intrusions;

d.      Failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;

e.      Failing to train its employees in the proper handling of emails containing personal identifying and personal health information;

f.      Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

g.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

h.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

i.  Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

j.  Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

k.  Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

l.  Failing to ensure compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

m.  Failing to train all members of its workforces effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

n.  Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR § 164.304's definition of "encryption");

o.    Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and;

p.    Failing to adhere to industry standards for cybersecurity.

59.    As the result of computer systems in dire need of security upgrading, inadequate procedures for handling emails containing viruses or other malignant computer code, and employees who opened files containing the virus or malignant code that perpetrated the cyberattack, MEDNAX negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII.

60.    Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with MEDNAX.

## CLASS ALLEGATIONS

61.    Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

62.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

All persons residing in the United States whose PII was compromised in the data breach announced by MEDNAX beginning on or about December 16, 2020 (the "Nationwide Class").

63.    The Maryland Subclass is defined as follows:

All persons residing in Maryland whose PII was compromised in the data breach announced by MEDNAX beginning on or about December 16, 2020 (the "Maryland Subclass").

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

64.     The above classes and subclasses are herein referred to as the "Classes."

65.     Excluded from the Classes are the following individuals and/or entities: MEDNAX and MEDNAX's parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which MEDNAX has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

66.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

67.     **Numerosity**, Fed R. Civ. P. 23(a)(1): Classes are so numerous that joinder of all members is impracticable. MEDNAX has identified thousands of patients whose PII may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within MEDNAX's records.

68.     **Commonality**, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.   Whether and to what extent MEDNAX had a duty to protect the PII of Plaintiff and Class Members;

    b.   Whether MEDNAX had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third-parties;

    c.   Whether MEDNAX had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

    d.   Whether MEDNAX failed to adequately safeguard the PII of Plaintiff and Class

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

Members;

e.   Whether and when MEDNAX actually learned of the Data Breach;

f.   Whether MEDNAX adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.   Whether MEDNAX violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.   Whether MEDNAX failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether MEDNAX adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether MEDNAX engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.   Whether Plaintiff and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of MEDNAX's wrongful conduct;

l.   Whether Plaintiff and Class Members are entitled to restitution as a result of MEDNAX's wrongful conduct;

m.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach;

n.   Whether MEDNAX violated the Maryland Personal Information Protection Act, Md. Comm. Code §§ 14-3501, *et seq.*

69.   **Typicality**, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to MEDNAX's misfeasance.

70.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for

19

certification because MEDNAX has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. MEDNAX's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on MEDNAX's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

71.    **Adequacy**, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

72.    **Superiority and Manageability**, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like MEDNAX. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

73.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because MEDNAX would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

74.     The litigation of the claims brought herein is manageable. MEDNAX's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

75.     Adequate notice can be given to Class Members directly using information maintained in MEDNAX's records.

76.     Unless a Class-wide injunction is issued, MEDNAX may continue in its failure to properly secure the PII of Class Members, MEDNAX may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and MEDNAX may continue to act unlawfully as set forth in this Complaint.

77.     Further, MEDNAX has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

Procedure.

78.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether MEDNAX owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.  Whether MEDNAX breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c.  Whether MEDNAX failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d.  Whether an implied contract existed between MEDNAX on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

    e.  Whether MEDNAX breached the implied contract;

    f.  Whether MEDNAX adequately, and accurately informed Plaintiff and Class Members that their PII had been compromised;

    g.  Whether MEDNAX failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h.  Whether MEDNAX engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

    i.  Whether Class Members are entitled to actual damages, statutory damages, injunctive relief, and/or punitive damages as a result of MEDNAX's wrongful conduct.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiff and the Classes)

Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-78 as if fully set forth herein. Plaintiff brings this claim individually and on behalf of the Class Members.

79.     In order to receive medical treatments and services, MEDNAX and/or its Agents required Plaintiff and Class Members to submit non-public PII, such as PII and PHI.

80.     Plaintiff and Class Members entrusted their PII to MEDNAX and/or its Agents with the understanding that MEDNAX would safeguard their information.

81.     By collecting and storing this data in its computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

82.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

83.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its client patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant

was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

84.     Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1).

85.     Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

86.     In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

87.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

88.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

    b.     Failing to adequately monitor the security of its networks and systems;

    c.     Failure to periodically ensure that its network system had plans in place to maintain reasonable data security safeguards;

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

    d.    Failing to adequately train its employees to recognize and contain phishing attacks;

    e.    Allowing unauthorized access to Class Members' PII;

    f.    Failing to detect in a timely manner that Class Members' PII had been compromised;

    g.    Failing to timely notify Class Members about the cyberattack regarding what type of PII had been compromised so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

    h.    Failing to have mitigation and back-up plans in place in the event of a cyberattack and data breach.

89.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the medical industry.

90.    It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

91.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the cyberattack and data breach.

92.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit and identity monitoring to all Class Members.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

## COUNT II
### Negligence Per Se
### (On Behalf of Plaintiff and the Classes)

Plaintiff realleges paragraphs 1–78 of this Complaint as if fully set forth herein. Plaintiff brings this claim on behalf of the Classes set forth above.

93.    Pursuant to HIPAA (42 U.S.C. § 1302d et seq.), the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), MEDNAX was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Personal Information.

94.    Plaintiff and Class Members are within the class of persons that the HIPAA was intended to protect.

95.    The harm that occurred as a result of the Data Breach is the type of harm that HIPAA was intended to guard against. The Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures relating to protected health information, caused the same harm as that suffered by Plaintiff and the Class.

96.    Plaintiff and Class Members are within the class of persons that the FTCA was intended to protect.

97.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

98.    MEDNAX breached its duties by failing to employ industry standard data and cybersecurity measures to gain compliance with those laws, including, but not limited to, proper

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

99.     It was reasonably foreseeable, particularly given the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Personal Information in compliance with applicable laws would result in an unauthorized third-party gaining access to MEDNAX's email accounts, networks, and computers that stored or contained Plaintiff's and Class Members' Personal Information.

100.    Plaintiff's and Class Members' Personal Information constitutes personal property that was stolen due to MEDNAX'S negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

101.    MEDNAX's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' unencrypted Personal Information and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of MEDNAX'S conduct. Plaintiff and Class Members seek damages and other relief as a result of MEDNAX's negligence.

<u>**COUNT III**</u>
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Classes)**

Plaintiff re-alleges and incorporates by reference Paragraphs 1-78 above as if fully set forth herein.

102.    Through their course of conduct, Defendant, Plaintiff, and Class Members entered into implied contracts for the provision of medical care and treatment, as well as implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

103.     Specifically, Plaintiff entered into a valid and enforceable implied contract with Defendant when she first went for medical care and treatment at one of Defendant's Agents' facilities.

104.     The valid and enforceable implied contracts to provide medical healthcare services that Plaintiff and Class Members entered into with Defendant and/or its Agents include the promise to protect non-public PII given to Defendant or that Defendant creates on its own from disclosure.

105.     When Plaintiff and Class Members provided their PII to Defendant and/or its Agents in exchange for medical services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

106.     Defendant and/or its agents solicited and invited Class Members to provide their PII as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

107.     In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

108.     Class Members who paid money to Defendant reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security.  Defendant failed to do so.

109.     Under the implied contracts, Defendant and/or its Agents promised and were obligated to: (a) provide healthcare to Plaintiff and Class Members; and (b) protect Plaintiff's and the Class Members' PII/PHI: (i) provided to obtain such healthcare; and/or (ii) created as a result of providing such healthcare. In exchange, Plaintiff and Members of the Class agreed to pay money for these services, and to turn over their PII.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

110.     Both the provision of medical services healthcare and the protection of Plaintiff's and Class Members' PII were material aspects of these implied contracts.

111.     The implied contracts for the provision of medical services – contracts that include the contractual obligations to maintain the privacy of Plaintiff's and Class Members' PII—are also acknowledged, memorialized, and embodied in multiple documents, including (among other documents) Defendant's Privacy Notice.

112.     Defendant's express representations, including, but not limited to the express representations found in its Privacy Notice, memorializes and embodies the implied contractual obligation requiring Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

113.     Consumers of healthcare value their privacy, the privacy of their dependents, and the ability to keep their PII associated with obtaining healthcare private. To customers such as Plaintiff and Class Members, healthcare that does not adhere to industry standard data security protocols to protect PII is fundamentally less useful and less valuable than healthcare that adheres to industry-standard data security. Plaintiff and Class Members would not have entrusted their PII to Defendant and/or its Agents and entered into these implied contracts with Defendant without an understanding that their PII would be safeguarded and protected, or entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

114.     A meeting of the minds occurred, as Plaintiff and Members of the Class agreed to and did provide their PII to Defendant and/or its Agents, and paid for the provided healthcare in exchange for, amongst other things, both the provision of healthcare and medical services and the protection of their PII.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

115.   Plaintiff and Class Members performed their obligations under the contract when they paid for their healthcare services and provided their PII.

116.   Defendant materially breached its contractual obligation to protect the non-public PII Defendant gathered when the sensitive information was accessed by unauthorized personnel as part of the cyberattack and Data Breach.

117.   Defendant materially breached the terms of the implied contracts, including, but not limited to, the terms stated in the relevant Privacy Notice. Defendant did not maintain the privacy of Plaintiff's and Class Members' PII as evidenced by its notifications of the Data Breach to Plaintiff and approximately 1,290,670 Class Members. Specifically, Defendant did not comply with industry standards, standards of conduct embodied in statutes like HIPAA and Section 5 of the FTCA, or otherwise protect Plaintiff's and the Class Members' PII, as set forth above.

118.   The cyberattack and Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

119.   As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiff and Members of the Class did not receive the full benefit of the bargain, and instead received healthcare and other medical services that were of a diminished value to that described in the contracts. Plaintiff and Class Members therefore were damaged in an amount at least equal to the difference in the value of the healthcare with data security protection they paid for and the healthcare services they received.

120.   Had Defendant disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither the Plaintiff, the Class Members, nor any reasonable person would have purchased healthcare from Defendant and/or its affiliated healthcare providers.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

121.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release and disclosure of their PII, the loss of control of their PII, the imminent risk of suffering additional damages in the future, disruption of their medical care and treatment, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

122.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

123.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit and identity monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Classes)**

Plaintiff re-alleges and incorporates by reference Paragraphs 1-78 above as if fully set forth herein.

124.    This count is plead in the alternative to the breach of contract counts above.

125.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and/or its Agents and in so doing provided Defendant with their PII. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

126.    Defendant knew that Plaintiff and Class Members conferred a benefit which

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

127.    The amount Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendant's network and the administrative costs of data management and security.

128.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

129.    Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

130.    Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

131.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their PII, they would not have agreed to Defendant's services.

132.    Plaintiff and Class Members have no adequate remedy at law.

133.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their PII is used; (c) the compromise, publication, and/or theft of their PII; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

134.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

135.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

### COUNT V
### BREACH OF CONFIDENCE
#### (On Behalf of Plaintiff and the Classes)

Plaintiff re-alleges and incorporates by reference Paragraphs 1-78 above as if fully set forth herein.

136.    At all times during Plaintiff's and Class Members' interactions with Defendant and/or its Agents, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII.

137.    As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third-parties.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

138.     Plaintiff and Class Members provided their PII to Defendant and/or its Agents with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized parties.

139.     Plaintiff and Class Members also provided their PII to Defendant and/or its Agents with the explicit and implicit understandings that Defendant would take precautions to protect such PII from unauthorized disclosure.

140.     Defendant voluntarily received in confidence Plaintiff's and Class Members' PII with the understanding that the PII would not be disclosed or disseminated to the public or any unauthorized third-parties.

141.     Due to Defendant's failure to prevent, detect, or avoid the Data Breach from occurring by, inter alia, following industry standard information security practices to secure Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII was disclosed and misappropriated to unauthorized third-parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

142.     As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages.

143.     But for Defendant's disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their protected PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third-parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' protected PII, as well as the resulting damages.

144.     The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff' and Class Members'

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

PII.

145.    As a direct and proximate result of Defendant's breach of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from medical fraud, financial fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of patients in their continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

146.    As a direct and proximate result of Defendant's breach of confidence, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

## COUNT VI
**VIOLATION OF THE MARYLAND PERSONAL**
**INFORMATION PROTECTION ACT,**
**Md. Comm. Code §§ 14-3501, et seq.**
**(On Behalf of Plaintiff and the Maryland Subclass)**

Plaintiff re-alleges and incorporates by reference Paragraphs 1-78 above as if fully set forth herein.

147.    Under Md. Comm. Code § 14-3503(a), "[t]o protect Personal Information from

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

unauthorized access, use, modification, or disclosure, a business that owns or licenses Personal Information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of Personal Information owned or licensed and the nature and size of the business and its operations."

148.    MEDNAX is a business that owns or licenses computerized data that includes Personal Information as defined by Md. Comm. Code §§ 14-3501(b)(1) and (2).

149.    Plaintiff and Class Members are "individuals" and "customers" as defined and covered by Md. Comm. Code §§ 14-3502(a) and 14-3503.

150.    Plaintiff's and Class Members' PII includes "Health information" and "Personal information" as covered under Md. Comm. Code §§ 14-3501(d) and (e).

151.    MEDNAX did not maintain reasonable security procedures and practices appropriate to the nature of the Personal Information owned or licensed and the nature and size of its business and operations in violation of Md. Comm. Code § 14-3503.

152.    The Data Breach was a "breach of the security of a system" as defined by Md. Comm. Code § 14-3504(1).

153.    Under Md. Comm. Code § 14-3504(b)(1), "[a] business that owns or licenses computerized data that includes Personal Information of an individual residing in the State, when it discovers or is notified of a breach of the security system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that Personal Information of the individual has been or will be misused as a result of the breach."

154.    Under Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), "[i]f, after the investigation is concluded, the business determines that misuse of the individual's Personal Information has occurred or is reasonably likely to occur as a result of a breach of the security

36

system, the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."

155.    Because MEDNAX discovered a security breach and had notice of a security breach, MEDNAX had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

156.    By failing to disclose the Data Breach in a timely and accurate manner, MEDNAX violated Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

157.    As a direct and proximate result of MEDNAX's violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiff and Class Members suffered damages, as described above.

158.    Pursuant to Md. Comm. Code § 14-3508, MEDNAX's violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices within the meaning of the Maryland Consumer Protection Act, 13 Md. Comm. Code §§ 13-101 *et seq*. and subject to the enforcement and penalty provisions contained within the Maryland Consumer Protection Act.

159.    Plaintiff and Class Members seek relief under Md. Comm. Code §13-408, including actual damages and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, requests judgment against MEDNAX and that the Court grant the following:

A.    For an Order certifying the Nationwide Class or, in the alternative, the Subclass as defined herein, and appointing Plaintiff and their Counsel to represent the certified

37

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

Classes;

B.      For equitable relief enjoining MEDNAX from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to the Plaintiff and Class Members;

C.      For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i.    prohibiting MEDNAX from engaging in the wrongful and unlawful acts described herein;

  ii.    requiring MEDNAX to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

 iii.    requiring MEDNAX to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless MEDNAX can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

 iv.    requiring MEDNAX to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying and personal health information of Plaintiff and Class Members;

  v.    prohibiting MEDNAX from maintaining Plaintiff's and Class Members' personal identifying and health information on a cloud-based database;

 vi.    requiring MEDNAX to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

MEDNAX's systems on a periodic basis, and ordering MEDNAX to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring MEDNAX to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring MEDNAX to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring MEDNAX to segment data by, among other things, creating firewalls and access controls so that if one area of MEDNAX's network is compromised, hackers cannot gain access to other portions of MEDNAX's systems;

x. requiring MEDNAX to conduct regular database scanning and securing checks;

xi. requiring MEDNAX to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii. requiring MEDNAX to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring MEDNAX to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with MEDNAX's policies, programs, and systems for protecting personal identifying information;

xiv. requiring MEDNAX to implement, maintain, regularly review, and revise as

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

necessary a threat management program designed to appropriately monitor MEDNAX's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.  requiring MEDNAX to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third-parties, as well as the steps affected individuals must take to protect themselves;

xvi.  requiring MEDNAX to implement logging and monitoring programs sufficient to track traffic to and from MEDNAX's servers; and

xvii.  for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate MEDNAX's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.  For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.  For an award of punitive damages;

F.  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.  For prejudgment interest on all amounts awarded; and

H.  Such other and further relief as this Court may deem just and proper.

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand that this matter be tried before a jury.


Dated this 28th, day of January 2021.

Respectfully submitted,

DEVINE GOODMAN & RASCO, LLP
2800 Ponce de Leon Blvd., Suite 1400
Coral Gables, FL 33134
Tel: 305-374-8200
Email:  rkuntz@devinegoodman.com

*/s/ Robert J. Kuntz, Jr.*
Robert J. Kuntz Jr., Esq.
Fla. Bar No: 094668

And Co-Counsel

M. ANDERSON BERRY
(*Pro Hac Vice application forthcoming*)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
(916) 777-7777
aberry@justice4you.com

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208